# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

HARRY TUNNELL,       )
             )
  **Plaintiff,**       )
             )
  **v.**          )   **CAUSE NO. 1:14-cv-00269-SLC**
             )
**U.S. DEPARTMENT OF DEFENSE,** )
             )
  **Defendant.**      )

## OPINION AND ORDER

Plaintiff Harry Tunnell ("Tunnell"), a U.S. military historian and retired U.S. Army

Colonel, filed a four-count complaint against Defendant U.S. Department of Defense ("DoD")

on September 11, 2014, alleging violations of the Freedom of Information Act ("FOIA"), 5

U.S.C. § 552, *et seq.*[1]  (DE 1).  The parties have since resolved Counts One, Two, and Four of

their dispute.  (DE 23).  The remaining count, Count Three, concerns three DoD training videos

featuring interviews and footage of U.S. military personnel deployed to Iraq and Afghanistan as

part of the 5th Brigade, 2nd Infantry Division, known as the "Stryker Brigade," of which Tunnell

was the commander.  Although the DoD initially refused to disclose the videos in their entirety,

it has since agreed to release the videos in redacted form to blur or disguise the names and

identities of the military personnel depicted therein.  Tunnell, however, claims that the videos

should be released in unredacted form.

Now before the Court is a motion for summary judgment (DE 29), together with a brief

in support (DE 30), asserting that the proposed redactions are warranted under Exemption 6 of

---

[1] Subject matter jurisdiction arises under 28 U.S.C. § 1331.  Jurisdiction of the undersigned Magistrate
Judge is based on 28 U.S.C. § 636(c), all parties consenting.  (DE 14).

the FOIA and that judgment as a matter of law should be entered in the DoD's favor. Tunnell has filed a brief in opposition to the motion (DE 36) and a supporting affidavit (DE 39), and the DoD has timely replied (DE 42). Accordingly, the motion is now ripe for ruling.

For the following reasons, the DoD's motion for summary judgment will be GRANTED.

## I. THE FREEDOM OF INFORMATION ACT

"The [FOIA] was enacted to facilitate public access to Government documents." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (citation omitted). "[T]he core purpose of the FOIA is to expose what the government is doing . . . ." *Lakin Law Firm, P.C. v. FTC*, 352 F.3d 1122, 1124 (7th Cir. 2003). "[T]he strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents." *Ray*, 502 U.S. at 173 (citations omitted); *see also U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989); *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989).

There are nine exemptions to a government agency's obligation to disclose documents in response to a FOIA request. 5 U.S.C. § 552(b). "[T]hese limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (alteration in original) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). "Consistent with the [FOIA]'s goal of broad disclosure, these exemptions have been consistently given a narrow compass." *Tax Analysts*, 492 U.S. at 151 (citations omitted); *see also FBI v. Abramson*, 456 U.S. 615, 630 (1982) ("FOIA exemptions are to be narrowly construed . . . .").

The particular exemptions at issue in this dispute are Exemptions 3 and 6. Exemption 3 addresses material specifically exempted from disclosure by a statute other than § 552(b). 5 U.S.C. 552(b)(3). Exemption 6 authorizes the withholding of "personnel and medical files and

similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).

"Congress' primary purpose in enacting Exemption 6 was to protect individuals from injury and embarrassment that can result from the unnecessary disclosure of personal information."  *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 599 (1982).  "The redaction procedure is . . . expressly authorized by FOIA."  *Ray*, 502 U.S. 164, 173.  "Congress thus recognized that the policy of informing the public about the operation of its Government can be adequately served in some cases without unnecessarily compromising individual interests in privacy."  *Id.*  "[The] burden remains with the agency when it seeks to justify the redaction of identifying information in a particular document as well as when it seeks to withhold an entire document."  *Id.*

"A district court may grant summary judgment to the government in a FOIA case only if the agency affidavits describe the documents withheld and the justifications for nondisclosure in enough detail and with sufficient specificity to demonstrate that material withheld is logically within the domain of the exemption claimed."  *Patterson v. I.R.S.*, 56 F.3d 832, 836 (7th Cir. 1995) (citations and internal quotation marks omitted).

## II.  FACTUAL AND PROCEDURAL BACKGROUND[2]

Tunnell served as the sole commander of the Stryker Brigade from the time of its creation in April 2007 until its deactivation in July 2010.[3]  (DE 39 ¶¶ 7, 17; DE 39-7).  Now retired, Tunnell is a U.S. Army-certified military historian who has authored two history books for the

---

[2] For summary judgment purposes, the facts are recited in the light most favorable to Tunnell, the nonmoving party.  *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

[3] The Stryker Brigade grew from 80 personnel initially to an organization of at least 5,000 soldiers in Afghanistan before its deactivation in 2010.  (DE 39-7; DE 39-8).

U.S. Army.  (DE 39 ¶¶ 5, 10).  He is frequently consulted by historians working on official and unofficial histories of various military matters.  (DE 39 ¶ 11).

Tunnell seeks unredacted versions of the following three videos: (1) 5/2 ID (SBCT) Discussion of a Commander's Role in Exercising Command and Control; (2) Operation Opportunity Hold: 5/2 SBCT Operations During Enduring Freedom; and (3) Operation Blowfish: Decision Making Exercise.  (DE 39-3).  The three videos were prepared at Tunnell's stateside base, Joint Base Lewis-McChord near Tacoma, Washington, for training purposes for the Stryker Brigade's deployment to and operation in Afghanistan.  (DE 39 ¶¶ 6-7).  The videos "contain interviews of United States military personnel discussing military tactics, techniques and procedures regarding U.S. combat operations in Iraq and Afghanistan, as well as brief video footage of armed forces on active duty in Afghanistan."[4]  (DE 30-1 ¶ 3).  Tunnell contends that the release of the unredacted videos is necessary "to serve the historical record and essential to creating a military history not only of the Stryker Brigade but [of] the War in Afghanistan in general."  (DE 36 at 2 (citing DE 39 ¶¶ 9, 12-16)).

On March 24, 2015, the DoD denied Tunnell's initial request for the videos.  (DE 39-3).  In doing so, the DoD cited FOIA Exemption 3, which pertains to material specifically exempted by statute.  (DE 39-3).  Specifically, the DoD relied on 10 U.S.C § 130(a), which establishes authority to withhold from public disclosure certain technical data with military application.  (DE 39-3; DE 39-4).  Internally, the DoD relied on a memorandum penned by Thomas Rudd, Protection Division Chief (the "Rudd Memorandum"), that recommended withholding the

---

[4] In considering the motion for summary judgment, the Court performed an *in camera* review of the three videos at issue.  (*See* DE 30 at 3 n.2; DE 43; DE 44); 5 U.S.C. § 552(a)(4)(B); *Int'l Counsel Bureau v. U.S. Dep't of Def.*, 864 F. Supp. 2d 101, 105 (D.C. 2012) ("FOIA allows but does not require courts to conduct *in camera* review of information withheld from disclosure by an agency." (citations omitted)).

training videos for two reasons. First, the videos "would provide an adversary enhanced understanding of US military Tactics, Techniques, and Procedures (TTP) as well as insight into the thought processes of US military leaders," the result of which "would be an increased potential of both the threat and success of enemy attacks against US and US trained forces." (DE 39-4 ¶ 2). Second, the videos "could be used by an adversary to identify and target current/former military and/or DoD affiliated personnel," elaborating that "[s]ince at least July of 2014 extremist forums have called for attacks against military and civilian[s] who are involved in the war on terror." (DE 39-4 ¶ 3).

Tunnell administratively appealed the DoD's decision to withhold the training videos. (DE 39-5). On October 5, 2015, his request was again denied in its entirety; the denial was documented in a "Memorandum for Record" penned by John Johnson, Director of Training, Army Staff (the "Johnson Memorandum"). (DE 39-6). Johnson explained in his Memorandum that the videos should not be released due to "operational security reasons" and that the Rudd Memorandum "accurately reflects our position that information in the requested videos would provide an adversary enhanced understanding of U.S. operations, equipment and unit capabilities." (DE 39-6).

Tunnell filed the instant suit on September 11, 2014, asserting that the DoD's failure to disclose the videos violated the FOIA. (DE 1). Subsequent to Tunnell's filing suit, the DoD, in an effort to settle the case, agreed to release the videos on the condition that the names and identities of military personnel depicted therein be redacted. (DE 30-1 ¶ 4; DE 39 ¶ 23). Specifically, the DoD proposes to blur the names and faces and to alter the voices of individuals appearing in the videos so that the names and identities of all military personnel are withheld.[5]

_____

[5] In a footnote in its reply brief, the DoD states that if the Court finds that the blurring of the names and faces of the individuals in the video and the disguising of their voices is too restrictive, the DoD "believes it can

(DE 30 at 3). To support its proposed redaction, the DoD produces the Declaration of Christina Asuncion, the FOIA Manager at Joint Base Lewis-McChord in Washington, who in turn cites to the Rudd Memorandum and the Johnson Memorandum as the DoD's rationale and support for the proposed redactions. (DE 30-1).

Tunnell opposes any redaction of the videos; he argues that redaction frustrates his purpose as a military historian to document a history of the Stryker Brigade and of the War in Afghanistan. (DE 39 ¶¶ 9, 11-16). He contends that a variety of published resources, including publications by the U.S. Army, have shown identifiable military personnel without redaction. (DE 39 ¶¶ 24 to DE 31). To illustrate this point, Tunnell points to the following publications:

(1)    In November 2014, the U.S. Army published "Strykers in Afghanistan," a 93-page document accounting the official history of the Stryker Brigade, which is available online at http://usacac.army.mil/sites/default/files/documents/lde/CSI/CSIPubs/StrykersInAfghanistan.pdf (last visited Sept. 15, 2016). (DE 39-1). The names and images of military personnel depicted in the official history are not redacted. (DE 39-1; DE 39-2).

(2)    The U.S. Army issued two press releases about the Stryker Brigade in which the names and images of soldiers were not redacted. (DE 39-7; DE 39-8).

(3)    In 2007, the U.S. Army published an article about the Stryker Brigade without redaction, disclosing the identities of the soldiers in the photo credits, which is available online at https://www.army.mil/article/2929/New_Stryker_Brigade_

---

accomplish its objectives by simply blurring the names and faces without any voice modifications." (DE 42 at 6 n.3).

Takes_Center_Stage/ (last visited Sept. 15, 2016).  (DE 39-11).

(4)     While the Stryker Brigade was operating in Afghanistan, military publications

        such as *Combat Camera Weekly: Afghanistan Edition* were disseminated which

        did not redact names, ranks, or images of military personnel.  (DE 39-9).

(5)     Army websites such as http://www.goarmy.com/army-videos.html contain

        photographs or videos of soldiers and their training in which the soldiers'

        identities are not redacted.  (DE 39-10).

(6)     The Defense Video & Imagery Distribution System, available at

        https://www.dvidshub.net/search?q=stryker+brigade, is a website that publicly

        releases materials containing identified or identifiable soldiers, including

        materials on the Stryker Brigade.  (DE 39-11).

(7)     During the Stryker Brigade's deployment to Afghanistan and before its

        deactivation, media materials containing unredacted videos, reports, and other

        information were released to journalists in the form of a media packet.  (DE 39-

        13).

On November 9, 2001, in the wake of the September 11, 2001, terrorist attacks, the

Secretary of Defense issued a Memorandum for DoD FOIA Offices (the "DoD Memorandum")

revising the DoD's policy concerning disclosure of personal identifying information of military

personnel in response to FOIA requests.  (DE 39-14).  The Secretary explained that because of

heightened interest in the personal privacy of DoD personnel concurrent with the increased

security awareness demanded in times of national emergency, the DoD pursuant to FOIA

Exemption 6 "shall ordinarily withhold lists of names and other personally identifying

information of personnel currently or recently assigned." (DE 39-14 at 2). The Secretary further articulated that "[o]rdinarily names of DoD personnel, other than lists of names, mentioned in documents that are releaseable under the FOIA should *not* be withheld, but in special circumstances where the release of a particular name would raise substantial security or privacy concerns, such a name may be withheld." (DE 39-14 at 3 (emphasis added)).

### III. STANDARD OF REVIEW ON SUMMARY JUDGMENT

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne*, 337 F.3d at 770. When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id*. (citations omitted). The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted).

If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770. A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true[,]" as "summary judgment cannot be used to resolve swearing contests between litigants." *Id*. (citations omitted). However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id*. at 771

(citation omitted).

## IV. DISCUSSION

### A. *That the DoD's Rationale for Withholding the Videos Has Shifted Does Not Bar Its Current Reliance on Exemption 6*

At the outset, Tunnell observes that the DoD's rationale for withholding the training videos has shifted since he made his initial FOIA request. He points out that the DoD initially withheld the videos in their entirety under Exemption 3 (authority to withhold from public disclosure certain technical data, 10 U.S.C. § 130), but that it has since abandoned that argument and agreed to release the videos on the condition that the names and identities of the military personnel be redacted. The DoD now points to Exemption 6 as authority for the redaction, arguing that the release of the unredacted videos would be a clearly unwarranted invasion of personal privacy of the military personnel depicted therein. Tunnell seizes on this shifting rationale as evidence undercutting the DoD's credibility, asserting that its decision-making pertaining to the videos is "arbitrary, capr[i]cious or in bad faith." (DE 36 at 5).

The DoD's assertion of Exemption 6, however, is not inconsistent with the second of the two reasons discussed in the Rudd Memorandum—that the videos "could be used by an adversary to identify and target current/former military and/or DoD affiliated personnel." (DE 39-4 at 2). The fact that the DoD cited only the first of the two reasons in the Rudd Memorandum when initially withholding the videos does not doom its defense of this case in federal court. "[T]here is no requirement that an agency administratively invoke an exemption in order to later rely on it in federal court." *Barnard v. Dep't of Homeland Sec.*, 598 F. Supp. 2d 1, 24 (D.D.C. 2009) (citations omitted); *see Young v. CIA*, 972 F.2d 536, 538 (4th Cir. 1992) ("[A]n agency does not waive FOIA exemptions by not raising them during the administrative

process." (citation omitted)); *Hodes v. U.S. Dep't of Hous. & Urban Dev.*, 532 F. Supp. 2d 108, 114 n.2 (D.D.C. 2008) (stating that an agency could invoke an exemption that was not previously asserted in its communications with the FOIA requester); *Lawrence v. U.S. I.R.S.*, 355 F. Supp. 2d 1307, 1310 (M.D. Fla. 2004) ("An agency's failure to assert exemptions during the administrative process does not act as a waiver in subsequent litigation." (citation omitted)). Therefore, that the DoD cited solely Exemption 3 to deny Tunnell's request at the administrative level does not bar the DoD from relying on Exemption 6 in this federal lawsuit.

### B. The Identities of the Military Personnel in the Videos Are the Type of Material Protected by Exemption 6

Having concluded that the DoD is not precluded from asserting Exemption 6, the Court will now address the scope of Exemption 6. As explained earlier, summary judgment may be granted in the DoD's favor "only if the agency affidavits describe the . . . justifications for nondisclosure in enough detail and with sufficient specificity to demonstrate that material withheld is logically within the domain of the exemption claimed." *Patterson*, 56 F.3d at 832 (citations and internal quotation marks omitted). Here, the DoD asserts that the names and identities of the military personnel appearing in the videos fall within the scope of "similar files" in Exemption 6.

The Supreme Court has held that the term "similar files" in Exemption 6 has a broad meaning. *See Washington Post Co.*, 456 U.S. at 602. Specifically, the Supreme Court explained: "In sum, we do not think that Congress meant to limit Exemption 6 to a narrow class of files containing only a discrete kind of personal information. Rather, [t]he exemption [was] intended to cover detailed Government records on an individual which can be identified as applying to that individual." *Id.* (citation and internal quotation marks omitted); *see Lurie v.*

10

*Dep't of Army*, 970 F. Supp. 19, 35 (D.D.C. 1997) (explaining that a "similar file" under

Exemption 6 "includes information that 'applies to a particular individual'" (quoting *Washington*

*Post Co.*, 456 U.S. at 602)). "When disclosure of information which applies to a particular

individual is sought from Government records, courts must determine whether release of the

information would constitute a clearly unwarranted invasion of that person's privacy."

*Washington Post Co.*, 456 U.S. at 602.

Accordingly, courts have concluded that Exemption 6 applies to personal information in

a broad range of documents or materials. *See Ray*, 502 U.S. at 174 (redacting names of Haitian

nationals in interview and summary reports under Exemption 6); *Associated Press v. U.S. Dep't*

*of Def.*, 554 F.3d 274, 291 (2d Cir. 2009) (redacting names and addresses of family members of

Guantanamo Bay detainees contained in personal letters under Exemption 6); *Lakin Law Firm,*

*P.C.*, 352 F.3d at 1123 (redacting under Exemption 6 the names and addresses of individuals

who filed consumer complaints); *Sack v. CIA*, 53 F. Supp. 3d 154, 173 (D.D.C. 2014) ("Images

of an individual may implicate a privacy interest under Exemption 6."); *Schoenman v. F.B.I.*,

575 F. Supp. 2d 136, 164 (D.D.C. 2008) (redacting under Exemption 6 the names, serial

numbers, and assignments of military personnel in historical intelligence and information

reports); *N.Y. Times v. Nat'l Aeronautics & Space Admin.*, 920 F.2d 1002, 1009-10 (D.C. Cir.

1990) (finding that an astronaut's voice inflection on a recording constituted a "similar file[]"

under Exemption 6).

In fact, Tunnell does not specifically challenge the DoD's assertion that the identities of

the military personnel in the training videos are the type of information that may be withheld

under Exemption 6. Rather, Tunnell's arguments center on the weighing of the public and

private interests at issue under Exemption 6, together with a purported inconsistency between both the DoD's redaction of the videos with its release of identifying information of military personnel in other publications and the DoD's own administrative guidance. Accordingly, the Court concludes that the identities of the military personnel in the videos is the type of material that falls within the scope of Exemption 6.

### C. The Public Interest in Disclosure Is Outweighed by the Privacy Interests at Issue

Next, the Court must balance the public interest in disclosure against the privacy interests of the military personnel depicted in the training videos. *See Reporters Comm. for Freedom of the Press*, 489 U.S. at 758. To reiterate, Exemption 6 protects materials "the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." *Id.* (quoting 5 U.S.C. § 552(b)(6)).

### 1. The Public Interest

"[T]he only public interest that is relevant to [the] balancing test is the shining of a light on an agency's performance of its statutory duties." *Lakin Law Firm, P.C.*, 352 F.3d at 1125 (citing *Reporters Comm. for Freedom of the Press*, 489 U.S. at 773). Stated another way, "[t]he focus of the public interest analysis is the citizens' right to know 'what their government is up to.'" *Horowitz v. Peace Corps*, 428 F.3d 271, 278 (D.D.C. 2005) (quoting *Reporters Comm. for Freedom of the Press*, 489 U.S. at 773); *see Stevens v. U.S. Dep't of Homeland Sec.*, No. 13 C 03382, 2014 WL 5796429, at *7 (N.D. Ill. Nov. 4, 2014) ("[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'shed light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" (quoting *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 520

U.S. 487, 497 (1994))).

"As a general rule, if the information is subject to disclosure, it belongs to all." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). "Hence, release under FOIA is equivalent to making the information publicly available." *Horowitz*, 428 F.3d at 278. That is, "[e]ither all requestors have access or none do. The special needs of one, or the lesser needs of another, do not matter." *Reilly v. U.S. Dep't of Energy*, No. 07 C 995, 2007 WL 4548300, at *5 (N.D. Ill. Dec. 18, 2007) (alteration in original) (quoting *U.S. Dept. of Navy v. Fed. Labor Relations Auth.*, 975 F.2d 348, 355 (7th Cir. 1992)).

Here, Tunnell contends that, as a professional military historian, redacting the videos "would be a disservice to the historical record and would frustrate the efforts of any military historian to achieve a history of the Stryker Brigade or [of] the War in Afghanistan in general." (DE 39 ¶ 9). Tunnell explains that the redactions "would prevent proper citation of the interviews with the soldiers depicted in the videos, thereby frustrating a historian's purpose." (DE 39 ¶ 15). Tunnell, however, does not cite any cases legitimizing his assertion of a cognizable public interest under FOIA in facilitating more complete documentation by military historians.

In contrast, the DoD cites *Schoenman*, in which the plaintiff asserted that the names and other identifying information of Air Force members should be disclosed in certain documents in order to make "more accurate and detailed historical accounts." 575 F. Supp. 2d at 161. The court flatly rejected that assertion, stating: "Simply put, the 'public interest' Plaintiff identifies is not the public interest cognizable under FOIA Exemption 6." *Id*. "[T]he public's interest in disclosure of personnel files derives from the purpose of the [FOIA]—the preservation of the

citizens' right to be informed about what their government is up to."  *Id.* (second alteration in original) (citation and internal quotation marks omitted).  The *Schoenman* court concluded that the disclosure of the names would not shed any light on the Air Force's performance of its statutory duties, and thus, there was no public interest in its disclosure.[6]  *Id.*; *see also Associated Press*, 554 F.3d at 293 ("We do not see and AP failed to explain how revealing the family members' names and addresses would inform the citizens about 'what their government is up to.'" (quoting *Ray*, 502 U.S. at 177)).

The DoD further asserts that even when a FOIA claimant has established a public interest in the identities of military personnel, courts have approved redactions based on deference to national security determinations made by the government.  *See Hiken v. Dep't of Defense*, 521 F. Supp. 2d 1047, 1064-65 (N.D. Cal. 2007) (allowing redactions of names of military personnel interviewed about an attack on a journalist in Iraq due to risk of harm and retaliation to those individuals, despite that the names were "central to the public understanding of th[e] incident and the conduct of the government"); *see Ray*, 502 U.S. at 179 ("We generally accord Government records and official conduct a presumption of legitimacy.").

Therefore, as the DoD sees it, there is no public interest in disclosing the identities of the military personnel in the videos because that disclosure would not shed light on the DoD's performance of its statutory duties or otherwise let the public know what their government is up to.  DoD further argues that even if there is some slight public interest in the videos, the Court

_____

[6] In fact, "[i]n many contexts, federal courts have observed that disclosure of individual [federal] employee names tells nothing about what the government is up to."  *Long v. Office of Pers. Mgmt.*, 692 F.3d 185, 193 (2d Cir. Sept. 5, 2012) (citations and internal quotation marks omitted) (collecting cases).  And even in cases in which courts allowed for a possible public interest in identifying specific federal employees, such interest was slight, and was substantially outweighed by the threat to the employee's personal privacy.  *Id.* (collecting cases).

should defer to the national security determinations made by the DoD and redact the videos to protect the privacy interests of the military personnel depicted therein.

2.    The Private Interests

Tunnell argues, in essence, that because the DoD has released other publications that disclose personally identifying information of military personnel, including the members of the Stryker Brigade, there is little to no personal privacy interests at stake in releasing the unredacted videos. As such, Tunnell contends that the DoD's redaction of the videos is in bad faith.

To illustrate his point, Tunnell cites to the 104-page official history of the Stryker Brigade published by the U.S. Army, which details the Stryker Brigade's operations in Afghanistan during 2009. This document, which is available online, contains the name, rank, and images of several military officers, together with the names and ranks of up to 100 or more other officers and enlisted men. (DE 36 at 8-9; DE 39-1). Tunnell also produces two press releases concerning the Stryker Brigade issued by the Army; one identifying the name and rank of several officers (including Tunnell) (DE 39-8), and the other publishing the names, ranks, and images of various military officers and enlisted men (DE 39-9). Additionally, Tunnell observes that the Army has maintained several recruiting websites that include videos of soldiers and their training, and the soldiers' identities are not redacted in those videos. (DE 39-10). Tunnell further states that during the Stryker Brigade's deployment to Afghanistan, the Army distributed media materials to journalists that contained unredacted videos, reports, and other information. (DE 39-13).

In response, the DoD contends that Tunnell's comparison of the instant training videos to the release of other documents and videos by the DoD ignores the fundamental differences

between these types of materials. The videos at issue contain live interviews with military personnel discussing military tactics, techniques, and procedures relating to U.S. combat operations in Iraq and Afghanistan, which the DoD asserts are just "the sort of images that would be considered inflammatory by a terrorist organization or a lone wolf seeking 'revenge' on current or former military service members." (DE 42 at 3). In contrast, the printed history of the Stryker Brigade contains photographs of military personnel that were supplied courtesy of the individuals featured in the image. (DE 42 at 3 (citing DE 39-1 at 10, 19, 27, 29, 50; DE 39-2 at 7, 8, 11, 19)). Also, the DoD points out that its media packets primarily relate to the U.S. military's role in the governance, reconstruction, and development of Afghanistan, and as such, are not of the same inflammatory nature as the training videos, which feature military strategies. (DE 42 at 4). Similarly, the recruiting videos are not centered on discussing military strategy. (DE 42 at 4).

Tunnell's argument that the DoD has, in essence, waived any privacy interests of the military personnel depicted in the videos is unpersuasive. "The Supreme Court has explained that the privacy interest at stake in FOIA exemption analysis belongs to the individual, not the agency holding the information." *Sherman v. U.S. Dep't of Army*, 244 F.3d 357, 363 (5th Cir. 2001) (citing *Reporters Comm. for Freedom of the Press*, 489 U.S. at 763-65). "[T]he fact that otherwise private information at one time or in some way may have been placed [in] the public domain does not mean that a person irretrievably loses his or her privacy interest in the information." *Id.* (citing *Reporters Comm. for Freedom of the Press*, 489 U.S. at 770; *Halloran v. Veterans Admin.*, 874 F.2d 315, 322 (5th Cir. 1989)). "[O]nly the individual whose informational privacy interests are protected by [E]xemption 6 can effect a waiver of those

privacy interests when they are threatened by an FOIA request." *Id.* Therefore, that the DoD has disclosed other publications without redacting the identity of the military personnel therein does not nullify the privacy interests of the military personnel depicted in the three videos at issue here.

Furthermore, the Court agrees that there are at least some differences between the videos at issue and the published materials cited by Tunnell. The videos, which were prepared for training purposes, contain live interviews with military personnel discussing military combat strategies. In contrast, the materials that Tunnell points to in the public domain are primarily centered on recruitment and public relations, and as such, appear less inflammatory in content. As such, the Court agrees that the release of the unredacted videos implicate more than a *de minimis* privacy interest for the military personnel depicted therein. *See Schoenman*, 575 F. Supp. 2d at 160 (explaining that in terms of Exemption 6, "[a] substantial privacy interest is anything greater than a *de minimis* privacy interest" (alteration in original) (citation omitted)).

Tunnell further argues that the DoD's redaction of the videos contradicts its own administrative guidance pertaining to Exemption 6. In that regard, the DoD Memorandum provides that "lists of names and other personally identifying information of personnel *currently or recently assigned*" to DoD units should ordinarily be withheld under FOIA Exemption 6. (DE 39-14 at 2 (emphasis added)). The DoD Memorandum further states that "[o]rdinarily names of DoD personnel, other than lists of names, mentioned in documents that are releasable under the FOIA should *not* be withheld, but in special circumstances where the release of a particular name would raise substantial security or privacy concerns, such a name may be withheld." (DE 39-14 at 3 (emphasis added)).

Tunnell points out that the members of the Stryker Brigade do not fall within either of these two protected categories, as the members are not "currently or recently assigned" to the Brigade since the Brigade was disbanded in 2010 and the videos do not contain "lists of names." Nor does the DoD suggest that the release "of a particular name" in the videos would raise substantial security or privacy concerns. Rather, the DoD maintains that *all* names or images of military personnel must be redacted. Thus, as Tunnell sees it, the DoD's proffered redaction of the videos contravenes its own administrative guidance concerning Exemption 6.

But as the DoD emphasizes, the Rudd Memorandum explains how the recent rise of domestic supporters of terrorism presents a security risk to anyone who was involved in combat operations in Iraq and Afghanistan. (DE 30-1). The Rudd Memorandum cites recent samples of propaganda from the Islamic State and supporters calling for "lone wolf" attacks in the West that specifically target law enforcement, military, and government officials. (DE 30-1 at 8). The Rudd Memorandum also includes a list of recent lone-offender attacks in the West against law enforcement, military, or government officials. (DE 30-1 at 10-11). As such, the Rudd Memorandum contemplates more recent considerations and events than the DoD Memorandum drafted 14 years earlier. As a general matter, "[i]t is not uncommon for courts to recognize a privacy interest in a federal employee's work status (as opposed to some more intimate detail) if the occupation alone could subject the employee to harassment or attack." *Vietnam Veterans of Am. Conn. Greater Hartford Chapter 120 v. Dep't of Homeland Sec.*, 8 F. Supp. 3d 188, 230 (D. Conn. 2014) (quoting *Long*, 692 F.3d at 192).

Moreover, in *Schoenman*, the district court relied on the DoD Memorandum to conclude that former military personnel whose names appeared in documents from 1996 had legitimate

privacy interests against the disclosure of their identifying information under Exemption 6. 575

F. Supp. 2d at 160. In doing so, the court reasoned:

> [P]rior to September 11th, the DoD disclosed names and other nonsensitive data concerning most of its service-members and civilian employees not actively assigned overseas, on board ship, or to sensitive or routinely deployable units. In contrast, since the attacks, as a matter of official policy, the DoD carefully considers and limits the release of all names and other personal information concerning military and civilian personnel, based on a conclusion that they are at increased risk regardless of their duties or assignment to such a unit. This policy reflects the heightened interest in the personal privacy of DoD personnel that is concurrent with the increased security awareness demanded in times of national emergency.

*Id*. at 160 (citations and internal quotation marks omitted). Thus, there is no indication that the

court viewed the DoD's withholding of the identifying information in that instance as

inconsistent with the DoD Memorandum.

       3.       <u>Balancing the Public and Private Interests</u>

       In balancing the public and private interests at stake, the privacy interests of the military

personnel at issue in the videos are more than *de minimis*. *See Vietnam Veterans*, 8 F. Supp. 3d

at 230 ("[C]ourts routinely hold that lower-level DoD employees have more than a *de minimis*

interest in not having their names disclosed." (collecting cases)). The videos contain live

interviews with military personnel discussing military combat strategies concerning the U.S.

combat operations in Iraq and Afghanistan. The DoD has persuasively shown—through the

Rudd Memorandum—that the unredacted videos could be used to identify and target current or

former military personnel during a time when extremist forums have called for attacks against

military personnel or civilians who are involved in the war on terror. *See, e.g., Kimmel v. U.S.*

*Dep't of Def.*, No. 04-1551 (HHK), 2006 WL 1126812, at *3 (D.D.C. Mar. 31, 2006) ("DoD

acted out of concern that employees of DoD could become targets of terrorist assaults, and the

court has no reason to question this determination.").  On the other hand, Tunnell's interest as a military historian in creating accurate historical accounts is not a matter of public interest of the type cognizable under the FOIA, as the names and identities of the military personnel in the videos would not "shed any light on the Army's conduct."  *Schoenman*, 575 F. Supp. 2d at 164; *see Corbett v. Transp. Sec. Admin.*, 568 F. App'x 690, 704 (11th Cir. 2014) ("The TSA's documents and videos describe in full detail every aspect of the events at issue and the TSA's response to those events.  Disclosure of the names of the individuals in those documents, or faces of the individuals, would not add to a reader's or viewer's understanding of those documents and images." (citation omitted)).

Given that the private interests in nondisclosure are more than *de minimis*, and given the lack of public interest to support disclosure, the release of the unredacted videos would constitute a clearly unwarranted invasion of personal privacy.  *See Matter of Wade*, 969 F.2d 241, 247 (7th Cir. 1992) ("A modest disclosure would be 'clearly unwarranted' if no reason exists warranting its dissemination." (citing *U.S. Dep't of Air Force v. Fed. Labor Relations Auth.*, 838 F.2d 229, 232 (7th Cir. 1988))); *Schoenman*, 575 F. Supp. 2d at 161 ("[T]he Court need not linger over the balance; something, even a modest privacy interest outweighs nothing every time." (citations and internal quotation marks omitted)).  Accordingly, the Court finds that the balance tips decidedly in favor of withholding the names and identities of the DoD military personnel depicted in the videos under FOIA Exemption 6.  As such, the DoD's motion for summary judgment will be GRANTED.

## V.  CONCLUSION

For the foregoing reasons, the DoD's motion for summary judgment (DE 29) is

GRANTED.  The Clerk is DIRECTED to enter a judgment in favor of the DoD and against

Tunnell.

SO ORDERED.

Entered this 30th day of September 2016.

/s/ Susan Collins
Susan Collins,
United States Magistrate Judge